UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SKYBOLT AEROMOTIVE
CORPORATION, a Florida Corporation

    Plaintiff,

v.                                          Case No: 5:16-cv-616-Oc-PRL

MILSPEC PRODUCTS, INC. and
JEREMY SUMMERS

    Defendants.

## ORDER

Today I heard oral argument from the parties on Plaintiff's motion for a preliminary injunction. (Doc. 32). During the course of the hearing it became clear that the issues before the Court—for purposes of that motion—are whether Defendant Milspec Products, Inc. has TSO-C148 approval from the Federal Aviation Administration ("FAA") for certain products and, if not, whether Milspec is falsely advertising that is does have such approval.

Through Congress, the FAA has expansive authority to "promote safe flight of civil aircraft in air commerce by prescribing," among other things, "minimum standards required in the interest of safety for appliances and for the design, material, construction, quality of work, and performance of aircraft." 49 U.S.C. § 44701(a)(1). As set forth in the motion, Milspec competes with Plaintiff "in the aerospace fastener industry wherein both parties sell quarter turn fasteners, panel fasteners, cowling fasteners and captive fasteners which are installed on general aviation airframes, corporate jet aircraft and commercial airplanes." (Doc. 32 at p. 2). The fasteners Milspec produces "must meet certain performance standards prescribed in technical standard order

(TSO) C-148 ("TSO-C148") in order to be sold and installed on aircraft" and "in order to advertise or promote the fact that one has TSO-C148 approval, one must submit a TSO application to the FAA with drawings, fastener performance requirements and limitations, TSO Qualification test reports, lot numbers of qualification parts, raw material heat number or certification numbers and material composition of the qualification parts." (Doc. 32 at p. 2). And as further set forth in Plaintiff's motion, the production and sale of aircraft fasteners that purport to have, but nevertheless lack TSO-C148 approval, likely puts consumers and the general public at risk of harm. (Doc. 32 at pp.24–25). Doing so also harms Plaintiff and amounts to false advertising under the Lahnam Act, as Plaintiff alleges in its complaint.

Now, Plaintiff asserts the Milspec has implemented a complex fraudulent scheme through the use of numerous forged or otherwise fraudulent documents to deceive the FAA, this Court, and Plaintiff into believing that Milspec has TSO-C148 approval for *all* of its fasteners—when in reality it has approval for just a small fraction of its fasteners (according to Plaintiff's counsel's argument before the Court today).[1] Plaintiff's counsel further stated today that it is still receiving falsified documents from Milspec and did receive such documents a few days ago.

---

[1] Plaintiff claims that aside from C-SPEC 2600, 2700, and 4002 parts and the C-SPEC Isolator Platemount Assembly, that Milspec's A-SPEC, Z-SPEC, and C-SPEC 2800, 2000, and 4000 parts are not approved under FAA TSO-C148 and that Milspec should be enjoined from falsely advertising that they are and from selling such unapproved items. As the litigation surrounding the request for a preliminary injunction has unfolded Plaintiff disputes the veracity of certain letters that appear to be from the FAA (particularly a December 2003 or 2008 letter and a December 2009 letter) showing approval for the items it says Plaintiff shouldn't be marketing or selling. Plaintiff then says, in response to more recent FAA letters that suggest that Milspec has the approval Plaintiff claims it doesn't have (namely, a February 27, 2017 and March 30, 2017 letter), that those letters must simply be based on the earlier fraudulent ones. Then, Plaintiff's counsel argues (it appears for the first time at the preliminary injunction hearing), that even if all of these letters are true (i.e., even if they accurately reflect approvals for the items they appear to show approval for), there are still over 400 or so *other* items that Milspec lacks TSO-C148 approval for. If the question of what items do or don't have TSO-C148 approval is going to be presented to the FAA (or even litigated here), then a detailed and comprehensive list of what items are in dispute should be assembled.

On the other hand, as part of its response to Plaintiff's motion for a preliminary injunction, Milspec submits that this Court is not the proper forum to resolve the issue of whether its fasteners lack TSO-C148 approval. (Doc. 38 at pp.14–16). When the Court considered this argument, the Court reflected on whether the primary jurisdiction doctrine, which allows "a court of competent jurisdiction [to] stay an action pending resolution of an issue that falls within the special competence of an administrative agency," *Beach TV Cable Co. v. Comcast of Florida/Georgia, LLC*, 808 F.3d 1284, 1288 (11th Cir. 2015), may be both applicable and appropriate to help answer the question of whether Milspec has the approvals from the FAA that Milspec says it has. And, at today's hearing, it appears the Milspec submits that the FAA, under the primary jurisdiction doctrine, would be the most appropriate forum to determine this issue.[2]

Accordingly, as stated during the hearing, the parties shall have until **on or before April 28, 2017** to brief the following issues: (1) whether the primary jurisdiction doctrine is applicable here and whether its invocation is appropriate; (2) the manner in which the question of Milspec's TSO-C148 fastener approval (or lack thereof) should be referred to the FAA, assuming the primary jurisdiction doctrine does apply and should be invoked; and (3) to what extent this matter should

---

[2] Indeed, the FAA has a mechanism for addressing and remedying violations, including obtaining injunctive relief. "Any person who knows of a violation of the Federal Aviation Act of 1958 . . . or any rule, regulation, or order issued thereunder, should report it to appropriate personnel of any FAA regional or district office." 14 C.F.R. § 13.1(a); *see also id.* at § 13.1(b) ("Each report made under this section, together with any other information the FAA may have that is relevant to the matter reported, will be reviewed by FAA personnel to determine the nature and type of any additional investigation or enforcement action the FAA will take."). "Any person may file a complaint with the Administrator with respect to anything done or omitted to be done by any person in contravention of any provision of any Act or of any regulation or order issued under it, as to matters within the jurisdiction of the Administrator." 14 C.F.R. § 13.5(a). When the FAA determines that a person "has engaged, or is about to engage, in any act or practice constituting a violation of the Federal Aviation Act of 1958, or any regulation or order issued under it for which the FAA exercises enforcement responsibility, . . . the [FAA's] Chief Counsel, [or other proper FFA authority] . . . , may request the United States Attorney General, or the delegate of the Attorney General, to bring an action in the appropriate United States District Court for such relief as is necessary or appropriate, including mandatory or prohibitive injunctive relief." 14 C.F.R. § 13.25(a).

be stayed, if at all, assuming that the primary jurisdiction doctrine does apply and the issue is referred to the FAA.

**DONE** and **ORDERED** in Ocala, Florida on April 14, 2017.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties