# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**SKYBOLT AEROMOTIVE CORPORATION**, a Florida Corporation

    Plaintiff,

v.                                    Case No: 5:16-cv-616-Oc-PRL

**MILSPEC PRODUCTS, INC.** and
**JEREMY SUMMERS**

    Defendants.

## ORDER

Before the Court is Plaintiff Skybolt Aeromotive Corporation's request for attorney's fees relating to Defendant MilSpec Products, Inc.'s inadequate discovery responses. (Docs. 31; 60; 60-1). MilSpec has responded in opposition to the fee request. (Doc. 66). For the following reasons, Plaintiff's motion is due to be granted to the extent set forth herein.

### I.    BACKGROUND

In October of last year, Plaintiff filed this case against MilSpec (and MilSpec's president, Jeremy Summers) asserting allegations of false advertising, false marking, misleading advertising, unfair and deceptive trade practices, and breach of a settlement agreement. (Doc. 1). According to Plaintiff, before propounding any discovery requests, it proposed a confidentiality agreement to MilSpec.[1] (Doc. 31 at ¶3). Plaintiff then served its First Request for Production of Documents on January 12, 2017. (Doc. 31 at ¶2).

---

[1] Plaintiff asserts that MilSpec ignored this request and Plaintiff's subsequent requests to enter a confidentially agreement. (Doc. 31 at ¶¶5, 7, 9, 15, 16).

On February 14, MilSpec requested a twenty-day extension to respond to Plaintiff's First Request for Production of Documents, which the Court granted. (Docs. 28, 30). MilSpec then timely responded to Plaintiff's First Request for Production of Documents on March 6, but offered no responsive documents and only objections. (Doc. 31 at ¶13; 31-5). The parties then conferred on March 10 and 14, resolved some of their discovery issues, and MilSpec agreed to produce some of the disputed discovery on or before March 17. (Doc. 31 at ¶14). But on March 17, MilSpec refused to produce certain documents, which, according to Plaintiff, necessitated its filing of a motion to compel. (Doc. 31 at ¶¶15–16).

So Plaintiff filed the underlying motion to compel on March 22. (Doc 31). In that eighteen-page motion, Plaintiff outlined the production requests at issue, MilSpec's objections, and why the Court should overrule those objections with citations to relevant case law, the Middle District's Discovery Handbook, and the Federal Rules of Civil Procedure. In brief, Plaintiff asserted, among other arguments, that the production requests at issue sought relevant information and that MilSpec's objections were mere boilerplate that lacked the requisite specificity. (*See* Doc. 31 at pp.13–16).

MilSpec then responded, noted that it had already produced some of the documents at issue after Plaintiff had filed the motion to compel and agreed to produce other documents as long as the scope of those requested documents was limited. (*See* Doc. 43 at ¶¶10–13). Also in that response, MilSpec asserted that though it conferred in good faith on March 22 and 23 with Plaintiff about the scope of some of the documents at issue, Plaintiff failed to provide MilSpec with any legal authority supporting Plaintiff's position and Plaintiff then "launched its Motion to Compel." (Doc. 43 at n.1). Next, Plaintiff replied to MilSpec's response, stating a slightly different version

of the events that occurred during the 3.01(g) conferences and reasserting its arguments against MilSpec's objections. (Doc. 51).

In late April, the Court entered an Order on Plaintiff's motion to compel. (Doc. 52). It stated that given MilSpec's post-motion-to-compel production and MilSpec's anticipated production, Plaintiff's motion to compel was now moot. (Doc. 52 at p.2). The Court further noted the apparent poor quality of the parties' discovery communications. (Doc. 52 at n.1). Then, based on MilSpec's disclosure of requested discovery *after* Plaintiff's motion to compel, and pursuant to Fed. R. Civ. P. 37(a)(5), the Court gave Plaintiff time in which to file an assessment of its reasonably incurred expenses and gave MilSpec an opportunity to show cause why those expenses should not be imposed against it. (Doc. 52 at p.3).

Plaintiff has now filed the affidavit of its attorney, Amber N. Davis, Esq., along with itemized billing records, and requests $5,284 in attorney's fees, but Plaintiff does not request any costs. (Doc. 60-1). MilSpec has responded and submits that Plaintiff should not receive any fees as Plaintiff failed to attempt a "genuine good faith effort to confer prior to the filing of the Motion to Compel" or, if the Court is inclined to award Plaintiff fees, that the requested fees should be reduced as "the vast majority of the time entries are not recoverable or duplicative in accordance with controlling law." (Doc. 66 at ¶¶2, 4).

## II. DISCUSSION

### A. Entitlement

As stated, MilSpec challenges Plaintiff's entitlement to attorney's fees on a single ground: that Plaintiff failed to *genuinely* confer with MilSpec in good faith before filing the underlying motion to compel. (Doc. 66 at ¶¶2–3); Fed. R. Civ. P. 37(a)(5)(A)(i) (noting that that Court must not award attorney's fees associated with a motion to compel if "the movant filed the motion before

attempting in good faith to obtain the disclosure or discovery without court action"). "A party satisfies the 'good faith' exception of Rule 37(a)(5)(A)(i) when it actively attempts to settle the dispute with the non-complying party before resulting to Court action." *Commerce First Fin., LLC v. Summerlin Bass, LLC*, No. 2:10-CV-290-CEH-DNF, 2011 WL 13141496, at *2 (M.D. Fla. June 16, 2011).

While MilSpec complains about the conference, *see* (Doc. 43 at n.1 (noting that the parties conferred on March 22, and that Plaintiff then "launched" its motion to compel on the very same day)), and contends that Plaintiff did not *genuinely* confer (Doc. 66 at ¶¶2–3), the record above shows—and MilSpec does not dispute—that numerous efforts were made by Plaintiff to work out the discovery without court intervention: (1) MilSpec's counsel ignored several communications from Plaintiff's counsel about the proposed confidentiality agreement (Doc. 31 at ¶¶3, 7, 9, 15, 16); (2) MilSpec responded to Plaintiff's discovery requests with only objections and no responsive documents on March 6 (Doc. 31 at ¶13; 31-5); (3) the parties then conferred on March 10, discussed the discovery at issue, came to an agreement about at least some of the disputed documents, and MilSpec agreed to produce undisputed documents on or before March 17 (Doc. 31 at ¶14); (4) the parties conferred again on March 14 (Doc. 31 at ¶14); (5) the parties conferred again on March 22 and MilSpec maintained its objections to the scope of certain discovery that it did not produce on March 17 (Doc. 43 at n.1; *see also* Doc. 31 at ¶14) ("Plaintiff received the selected responsive documents in response to its First Request for Production of Documents from Defendant on March 17, 2017"); and (6) the motion to compel at issue contains a Local Rule 3.01(g) certification that Plaintiff's counsel conferred with MilSpec's counsel, who "advised Plaintiff's counsel that Defendant does not consent to the relief sought herein" (Doc. 31 at pp.17–18), which is a certification that MilSpec did not challenge in its response to the motion to compel.

Based on the above undisputed facts, the Court cannot say that Plaintiff failed to meet and confer in good faith in an attempt to resolve the parties' discovery issues before filing the underlying motion to compel; indeed, these events suggest a good faith effort was made. *Cf. Commerce First Fin., LLC v. Summerlin Bass, LLC*, No. 2:10-CV-290-CEH-DNF, 2011 WL 13141496, at *1–2 (M.D. Fla. June 16, 2011) (finding that the plaintiff "filed its Motion to Compel prior to engaging in sufficient efforts with [the defendants] to settle the discovery dispute" when the plaintiff apparently declined "the opportunity to inspect and photocopy the documents provided" prior to filing the motion to compel).

### B. Attorney's Fees

Plaintiff seeks $5,284 in attorney's fees. (Doc. 61). In determining reasonable attorney's fees, the Court applies the federal lodestar approach, by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate for the services provided by counsel for the prevailing party. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Once the court has determined the lodestar, it may adjust the amount upward or downward based upon a number of factors, including the results obtained. *Norman v. Hous. Auth. of the City of Montgomery*, 836 F. 2d 1292, 1302 (11th Cir. 1988).

"Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436). Additionally, the Court is "'an expert on the question [of attorneys' fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent

judgment either with or without the aid of witnesses as to value.'" *Norman*, 836 F. 2d at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

### *1. Reasonable Hourly Rate*

"A reasonable hourly rate is the prevailing market rate *in the relevant legal community* for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (emphasis added). The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with the prevailing market rates. *Id*. The trial court, itself, is an expert on the question of the reasonableness of fees and may consider its own knowledge and experience. *Id*. at 1303.

Plaintiff requests the following hourly rates: $325 per hour for Attorney Jackson O. Brownlee, Esq., $325 per hour for Attorney Davis, $295 per hour for Attorney Kevin W. Wimberly, Esq., and $150 per hour for paralegal Barbie A. Mahan. According to Ms. Davis's affidavit, she is a board certified intellectual property lawyer and a shareholder at Beusse Wolter Sanks & Maire, PLLC, a boutique property law firm, which represents Plaintiff in this matter and also employs the other above-mentioned lawyers and paralegal. Mr. Brownlee is a former circuit judge and has around fifty-four years of legal practice; Mr. Wimberly has practiced law for almost ten years; and Mahan has been a paralegal for twenty-six years. (Doc. 60-1 at ¶¶4, 7, 8, 9).

In her affidavit, Ms. Davis cites two cases, each a few years old, in which this Court has awarded attorney's fees of $275 (or $265) per hour to Ms. Davis and $250 per hour to Mr. Wimberly (and she notes that her and Mr. Wimberly's respective rates have grown over the past few years). (Doc. 66-1 at ¶10); *Trieu, LLC v. Ho*, No. 6:14-CV-803-ORL, 2014 WL 5320560, at *2–3 (M.D. Fla. Oct. 17, 2014) (awarding Ms. Davis $275 per hour, Mr. Wimberly $250 per hour, and paralegal Mahan $100 per hour); *Dynamic Designs Distribution, Inc. v. Nalin Mfg., LLC*, No.

8:13-CV-707-T-33TBM, 2014 WL 11279821, at *2 (M.D. Fla. June 16, 2014) (awarding Ms. Davis $265 per hour, Mr. Wimberly $250 per hour, and paralegal Mahan $100 per hour). Ms. Davis also lists several intellectual property cases in which courts in this district have awarded fees comparable to those requested: *Achte/Neunte Boll King Beteiligungs GMBH & Co KG v. Palmer*, No. 2:11-CV-70-FTM-29SPC, 2011 WL 4632597, at *2 (M.D. Fla. Oct. 6, 2011) (awarding an attorney $295 per hour in Ft. Myers); *Clever Covers, Inc. v. Sw. Florida Storm Def., LLC*, 554 F. Supp. 2d 1303, 1314 (M.D. Fla. 2008) (awarding an attorney $300 per hour in Orlando); *Salle v. Meadows*, No. 607CV-1089-ORL-31DAB, 2008 WL 508400, at *2 (M.D. Fla. Feb. 21, 2008) (awarding an attorney $350 per hour and a paralegal $75 per hour in Orlando).

And a review of decisions from this Division shows that the prevailing market rate is consistent with both the proposed attorney's fees and the proposed paralegal fees here. *See, e.g.*, *Ranize v. Town of Lady Lake, Fla.*, No. 511-CV-646-OC-PRL, 2015 WL 1037047, at *5 (M.D. Fla. Mar. 10, 2015) (awarding counsel a rate of $375 per hour in Ocala); *Am. Home Assur. Co. v. Weaver Aggregate Transp.*, Inc., 89 F. Supp. 3d 1294, 1305 (M.D. Fla. 2015) (awarding a paralegal a rate of $114 per hour in Ocala). Thus, given the fact the MilSpec does not challenge the requested rates, and based upon the foregoing and the Court's own experience and familiarity with rates in the Ocala Division, the undersigned finds that the requests hourly rates are reasonable.

### 2. *Reasonableness of Hours Expended*

The next step in the lodestar analysis is to determine what hours were reasonably expended on the litigation. The attorney fee applicant should present records detailing the amount of work performed and "[i]nadequate documentation may result in a reduction in the number of hours claimed, as will a claim for hours that the court finds to be excessive or unnecessary." *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985). Then, the fee

opponent "has the burden of pointing out with specificity which hours should be deducted." *Rynd v. Nationwide Mut. Fire Ins. Co.*, No. 8:09-cv-1556-T-27TGW, 2012 WL 939387, at *3 (M.D. Fla. January 25, 2012) (quoting *Centex-Rooney Const. Co., Inc. v. Martin Cnty.*, 725 So.2d 1255, 1259 (Fla. App. Ct. 1999); *see also Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) ("As the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponents.").

Additionally, attorneys "must exercise their own billing judgment to exclude any hours that are excessive, redundant, or otherwise unnecessary." *Galdames v. N&D Inv. Corp.*, 432 F. App'x 801, 806 (11th Cir. 2011). And a court may reduce excessive, redundant, or otherwise unnecessary hours, or may engage in "an across-the-board cut," as long as the court adequately explains its reasons for doing so. *Id.*

Plaintiff requests 19.3 hours' worth of attorney's fees.[2] (Doc. 60-1 at ¶6). MilSpec seeks to reduce these hours on two grounds: (1) many of the requested hours are not recoverable here and (2) many of the hours are duplicative.

As to the first basis for reduction, generally speaking, "[u]nder Rule 37(a)(5)(A), 'an award of expenses is limited to the expenses incurred in making the motion to compel.'" *RBC Bank (USA) v. Funk Family P'ship, Ltd. #2*, No. CA 11-0210-CG-C, 2011 WL 13136317, at *3 (S.D. Ala. Nov. 16, 2011) (quoting *Hall v. Government Employees Ins. Co.*, 2008 WL 2704595, *1 (M.D. Ga. July 3, 2008)). For example, "Rule 37(a)(5)(A) provides for an award of the expenses incurred in filing a motion to compel, not the expenses incurred in trying to obtain discovery responses before filing a motion to compel." *Odom v. Navarro*, No. 09-21480-CIV, 2010 WL

---

[2] Though the Plaintiff clearly requests a total of 19.7 hours, the hours provide in the detailed itemization table (Doc. 60-1 at pp.2–3 and Table 1 in the appendix below) provides the Court with only 19.3 hours. And the first billing entry appears to overstate Mr. Brownlee's hourly rate by $25.

547652, at *4 (S.D. Fla. Feb. 11, 2010). Thus, all the requested hours that predate March 16, 2017 (a total of 3.3 hours (Doc. 60-1 at p.2)) and that were entered before Plaintiff's counsel (through paralegal Mahan) began to draft the motion on March 16 should not be included in the award here.

Likewise, any other requested hours that were incurred after or during the motion's drafting, but were not associated with "making the motion to compel," are also not compensable. These hours include 1.2 hours that Mr. Brownlee traveled to opposing counsel's office on March 17 and the 5.1 hours incurred after March 22 (the date the motion to compel was filed), with the exception, however, of the 2.5 hours that Ms. Davis spent drafting the reply to MilSpec's response. *See United States v. DSE, Inc.*, No. 8:08-CV-2416-T-23EAJ, 2012 WL 12898790, at *1 (M.D. Fla. Nov. 9, 2012) (awarding fees for the preparation of the motion to compel and the associated reply). Thus I submit that only 12.2 hours were incurred in making the motion to compel at issue here.[3]

---

[3] These hours include the following:
- 1.8 hours incurred by paralegal Mahan on March 16 to "Draft Motion to Compel" (Doc. 60-1 at p.10);
- 2 hours incurred by Mr. Brownlee on March 17 to "Prepare Motion to Compel; research and meeting with KWW regarding research issues" (Doc. 60-1 at pp.2, 10);
- 1.2 hours incurred by Mr. Wimberly on March 17 for "Meeting with JOB; research issues related to Motion to Compel" (Doc. 60-1 at p.2, 10);
- 2.7 hours incurred by Mr. Wimberly on March 19 to "Draft additional argument and edits to Motion to Compel" (Doc. 60-1 at pp. 2, 10);
- .4 hours incurred by paralegal Mahan on March 21 to "Make additional changes to Motion to Compel" (Doc. 60-1 at pp.3, 10);
- .4 hours incurred by Ms. Davis on March 21 to "Review and revise Motion to Compel" (Doc. 60-1 at pp.3, 10);
- .3 hours incurred by Mr. Wimberly on March 21 for "Final Changes to Motion to Compel" (Doc. 60-1 at pp.3, 10);
- .9 hours incurred by Ms. Davis on March 22 re "Revised Motion to Compel to include additional case law regarding boiler plate objections and sanctions; correspondence with JOB and BAM regarding same" (Doc. 60-1 at pp.3, 11); and
- 2.5 hours incurred by Ms. Davis on April 17 to "Prepare[] Reply to Response in Opposition to Motion to Compel" (Doc. 60-1 at pp.3, 14).

As to MilSpec's second basis for reducing the requested hours, MilSpec argues that it actually took paralegal Mahan 1.8 hours to draft the motion to compel and that all other related billing entries—e.g., the "time spent by the lawyers [] to review and revise and research issues surrounding the application for relief"—are duplicative, excessive, and unreasonable. (Doc. 66 at ¶¶4, 10). MilSpec's argument is not well taken here.

The underlying motion to compel is eighteen pages in length; cites and quotes relevant case law, rules of procedure, and this District's discovery handbook; contains numerous arguments; and covers several substantive legal issues—e.g., whether Plaintiff can discover into sales documents and other data to support its damages claim before establishing liability (Doc. 31 at pp.4–5, 8, 9, 10, 11, 12), the alleged inadequacy of MilSpec's privilege claims (Doc. 31 at pp.4–5), the alleged inadequacy of MilSpec's "boilerplate" objections (Doc. 31 at pp.6–8, 13–16), and why Plaintiff is entitled to a fee award under Rule 37 (Doc. 31 at pp.16–17). *Cf. Odom*, 2010 WL 547652 at *4–5 (awarding only one hour to the less-experienced attorney who drafted the motion to compel and only .2 hours to the more-experienced attorney who reviewed the motion when "[t]he portion of the motion which asks the Court to compel discovery requests from Defendants appears to be a form, containing no case law, and merely states the various requirements of [the Civil Rules]" and when "a reasonable amount of time to spend in drafting the motion to compel, which was based upon a total failure to respond to discovery, should not have exceeded one hour, even for a relatively inexperienced attorney"). Thus the Court submits here that twelve hours was a reasonable amount of time in which to draft the underlying motion to compel and its associated reply, which together total twenty pages and both which contain ample legal argument and citation. *DSE, Inc.*, 2012 WL 12898790 at *1 (finding reasonable a total of ten hours to prepare a thirteen-page motion to compel and a five-page reply); *cf. Drury v. Pena*, No. 95-848-CIV-J-21B, 1997

WL 718831, at *6 (M.D. Fla. Oct. 15, 1997) (finding that five hours was a reasonable amount of time to draft a nine-page motion to compel).

In sum, the requested hours will be reduced from 19.3 to 12.2 and be awarded in the following manner: 4.2 hours for Mr. Wimberly; 3.8 hours for Ms. Davis, and 2.2 hours for paralegal Mahan; and 2 hours for Mr. Brownlee.

   *3. Lodestar Summary*

There are no further grounds to either reduce or increase the requested fees. Accordingly, Plaintiff should be awarded a total $3,454 in fees: $1,239 for Mr. Wimberly, $1,235 for Ms. Davis, $650 for Mr. Brownlee, and $330 for paralegal Mahan.

   **III.   CONCLUSION**

Accordingly, and upon due consideration, Plaintiff Skybolt Aeromotive Corporation's request for attorney's fees against Defendant MilSpec Products, Inc., inadequate discovery responses is **GRANTED** in the amount of $3,454.

**DONE** and **ORDERED** in Ocala, Florida on June 7, 2017.

*[signature]*
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

# APPENDIX

| Table 1 | | | | | |
|---|---|---|---|---|---|
| **DATE** | **TIMEKEEPER** | **DESCRIPTION** | **RATE** | **HOURS** | **FEES** |
| 03/07/17 | Jackson 0. Brownlee | Receipt and review of Defendant's response to Request for Admissions and Request for Production. Telephone calls and emails to opposing counsel regarding inadequate responses and requesting Rule 3.0l(g) conference. | $350.00 | 1.2 | $420.00 |
| 03/07/17 | Barbie A. Mahan | Organize Defendants responses to discovery requests. | $150.00 | 1.2 | $180.00 |
| 03/10/17 | Barbie A. Mahan | Discuss elements of Motion to Compel with AND. | $150.00 | .10 | $15.00 |
| 03/10/17 | Jackson 0. Brownlee | Telephone conference with Lee Morrison regarding discovery. | $325.00 | .50 | $162.50 |
| 03/10/17 | Jackson 0. Brownlee | Dictation notes regarding 3.0l(g) conference. | $325.00 | .10 | $32.50 |
| 03/15/17 | Jackson 0. Brownlee | Telephone conference with Lee Morrison regarding Motion to Compel. | $325.00 | .20 | $65.00 |
| 03/16/17 | Barbie A. Mahan | Draft Motion to Compel. | $150.00 | 1.8 | $270.00 |
| 03/17/17 | Jackson 0. Brownlee | Prepare Motion to Compel; research and meeting with KWW regarding research issues. | $325.00 | 2.0 | $650.00 |
| 03/17/17 | Jackson 0. Brownlee | Travel to opposing counsel's office; review document production. | $325.00 | 1.2 | $390.00 |

| Date | Attorney | Description | Rate | Hours | Amount |
|---|---|---|---|---|---|
| 03/17/17 | Kevin W. Wimberly | Meeting with JOB; research issues relating to Motion to Compel. | $295.00 | 1.2 | $354.00 |
| 03/19/17. | Kevin W. Wimberly | Draft additional argument and edits to Motion to Compel | $295.00 | 2.7 | $796.50 |
| 03/21/17 | Barbie A. Mahan | Make additional changes to Motion to Compel. | $150.00 | .40 | $60.00 |
| 03/21/17 | Amber N. Davis | Review and revise Motion to Compel. | $325.00 | .40 | $130.00 |
| 03/21/17 | Kevin W. Wimberly | Final changes to Motion to Compel. | $295.00 | .30 | $88.50 |
| 03/22/17 | Amber N. Davis | Revised Motion to Compel to include additional case law regarding boiler plate objections and sanctions; correspondence with JOB and BAM regarding same. | $295.00 | .90 | $292.50 |
| 04/06/17 | Amber N. Davis | Reviewed discovery requests, responses and documents and prepared email to Lee regarding deficient discovery. | $325.00 | .40 | $130.00 |
| 04/11/17 | Jackson 0. Brownlee | Received telephone call from Lee Morrison regarding Motion to Compel. | $325.00 | .10 | $32.50 |
| 04/12/17 | Amber N. Davis | Reviewed Response in Opposition to Motion to Compel; correspondence with opposing counsel regarding filing a reply. | $325.00 | .50 | $162.50 |
| 04/14/17 | Barbie A. Mahan | Draft Motion for Leave to File Reply; finalize and file with Court utilizing CM ECF. | $150.00 | .40 | $60.00 |

| Date | Name | Description | Rate | Hours | Total |
|---|---|---|---|---|---|
| 04/17/17 | Amber N. Davis | Prepared Reply to Response in Opposition to Motion to Compel. | $325.00 | 2.50 | $812.50 |
| 04/26/17 | Barbie A. Mahan | Draft Affidavit of AND relating to fees associated with Motion to Compel. | $150.00 | 1.20 | $180.00 |